IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON  DIVISION

| | | |
|---|---|---|
| **Paula Young**, | ) | C/A  2:12-2337-RMG-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| **Roper St. Francis Healthcare,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This action has been filed by the Plaintiff, a former employee of the named

Defendant, alleging numerous causes of action.  The Defendant filed a motion for partial dismissal

of the Complaint pursuant to Rule 12, Fed.R.Civ.P., on August 15, 2012.  Plaintiff filed a

memorandum in opposition to the Defendant's motion on September 4, 2012, following which the

Defendant filed a reply memorandum on September 13, 2012.

In its reply, the Defendant withdrew that portion of its motion as sought dismissal of

Plaintiff's causes of action asserted under Title VII of the Civil Rights Act of 1964, 42  U.S.C. §

2000e, et seq.  Defendant also withdrew its argument that Plaintiff's claim under the South Carolina

Human Affairs Law (SCHAL) was subject to dismissal because Plaintiff did not properly file her

1



charge with the South Carolina Human Affairs Commission (SCHAC), although Defendant continues to assert that Plaintiff's SCHAL claim is subject to dismissal for being time barred. Defendant also continues to maintain its arguments for dismissal of Plaintiff's other causes of action, as discussed herein.

Defendant's motion is now before the Court for disposition.[1]

### Discussion

As noted, the Defendant has filed its motion to dismiss pursuant to Rule 12, Fed.R.Civ.P. When considering a Rule 12 motion to dismiss, the Court is required to accept the allegations in the pleading as true, and draw all reasonable factual inferences in favor of the Plaintiff. The motion can be granted only if the Plaintiff has failed to set forth sufficient factual matters in the Complaint to state a plausible claim for relief "on its face". Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

## I.

## (SCHAL CLAIM)

Plaintiff asserts claims for race/national origin discrimination in her First Cause of Action, and for retaliation in her Third Cause of Action, both under Title VII and SCHAL.[2]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion to dismiss. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]Plaintiff's Third Cause of Action does not actually state the basis for her retaliation claim, but as it is predicated on her having reported "illegal discrimination" to her superiors (a protected activity under both Title VII and SCHAL), it is assumed for purposes of this opinion that those statutes are the basis for her retaliation claim. Nonetheless, in response to this Report and (continued...)



Defendant does not contest Plaintiff's Title VII claims in its motion to dismiss, but does contest the viability of Plaintiff's claims under SCHAL.

Claims under the South Carolina Human Affairs Law, S.C.Code Ann. § 1-13-90, et. seq., are generally evaluated under the same standards as are used for evaluating claims under Title VII. See Orr v. Clyburn, 290 S.E.2d 804, 806 (S.C.1982); Tyndall v. National Education Centers, 31 F.3d 209 (4th Cir.1994); S.C.Code Ann. & 1-13-10 et al (2003); cf. Cromer v. Greenwood Com'n of Public Works, No. 92-CP-24-392, 1993 WL 328182, *4 (S.C.Com.Pl. Feb. 3, 1993)[The court notes that its ruling accords with the interpretation of federal employment discrimination laws upon which our state employment discrimination laws are modeled.]. However, SCHAL has its own separate time and filing requirements that are set by state law and are different than those that apply to claims under Title VII. Specifically, an action under SCHAL must be commenced within one (1) year from the date of the alleged violation, or within one hundred twenty (120) days from the date the administrative charge is dismissed by SCHAC,[3] whichever occurs earlier. See S.C.Code Ann. §1-13-90(d)(6).

Defendant now concedes that Plaintiff filed an administrative charge with the South Carolina Human Affairs Commission; see Reply Brief, pp. 2-3; but asserts that Plaintiff's SCHAL

---

[2](...continued)
Recommendation, Plaintiff should amend her Complaint to clarify this issue.

[3]As South Carolina is a deferral state, it was permissible for Plaintiff to file her administrative claim with SCHAC, instead of with the EEOC. Nelson v. Lockheed Missiles and Space Co., No. 97-1430, 1997 WL 727609 at **1 n. 1 (4th Cir. November 24, 1997); E.E.O.C. v. Hansa Products, Inc., 844 F.2d 191, 192 n. 1 (4th Cir. 1988) (quoting 42 U.S.C. § 2000e-5(e)) ["A deferral state is one 'which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice.'"]; see S.C.Code Ann. § 1-13-90, et. seq., as amended.



claim is nevertheless subject to dismissal because it was not filed within one year of the date of the alleged violation. Specifically, Defendant argues that, according to Plaintiff's administrative charge (a copy of which is attached to her Amended Complaint as Exhibit B),[4] the date of the latest discrimination alleged was March 18, 2011. It is arguable that Plaintiff's administrative charge could be interpreted as Defendant suggests, and in any event a review of the allegations of the Complaint confirms that the crux of Plaintiff's allegations concerning the discriminatory treatment she allegedly received occurred prior to the end of March 2011. <u>See generally</u>, <u>Amended Complaint</u>, ¶¶ 15-59, 76-79. It is also at least arguable that Plaintiff's retaliation claim could extend from April 1, 2011, when Plaintiff alleges she delivered a formal complaint of harassment and discrimination to the Defendant's Human Resources Department, and/or from her termination on May 9, 2011. <u>See</u> <u>Amended Complaint</u>, ¶ 63; <u>see also</u> Exhibit D to the Amended Complaint [Termination Letter]. However, even with respect to Plaintiff's retaliation claim (Third Cause of Action), to include Plaintiff's termination, that conduct/action occurred more than one year prior to the filing of Plaintiff's Complaint in the South Carolina Court of Common Pleas on May 21, 2012. <u>See</u> Court Docket No. 1.1, p. 3.[5]

---

[4]"In the employment context, a court may consider an EEOC charge and other [such] documentation [when considering a motion to dismiss] because such documents are integral to the complaint as Plaintiff necessarily relies on these documents to satisfy the time limit requirements of the statutory scheme." <u>Williams v. 1199 Seiu United Healthcare Workers East</u>, No. 12-72, 2012 WL 2923164 at * 1 n. 1 (D.Md. July 17, 2012) (citing <u>Holowecki v. Fed. Express Corp.</u>, 440 F. 3d 558, 565-566 (2d Cir. 2006); <u>McDougall v. Maryland Transit Auth.</u>, No. 11-3400, 2012 WL 1554924 at n. 3 (D.Md. Apr. 27, 2012)["a plaintiff's administrative discrimination charge is integral to a subsequent discrimination complaint."]).

[5]This case was originally filed in state court, and was removed to this United States District Court by the Defendant on August 15, 2012.



Hence, it is readily apparent from a plain reading of the Amended Complaint and attached exhibit [administrative charge] that Plaintiff did not file this lawsuit within one (1) year of the violations alleged in her administrative charge and/or in her Amended Complaint. Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002)[Plaintiff has burden of alleging facts sufficient to state all the elements of a claim]. Further, as is correctly pointed out by the Defendant in its reply brief, despite having been placed on notice of this ground for dismissal in the Defendant's motion to dismiss, Plaintiff in her response brief fails to even argue or address this issue. Therefore, because Plaintiff did not file her Complaint within one year of the violations alleged in her complaint or administrative charge, to the extent she is pursuing her discrimination claims under SCHAL, those claims should be dismissed as being time barred. S.C.Code Ann. § 1-13-90(d)(6); Iqbal, 129 S.Ct. at 1949 [Claim subject to dismissal where Plaintiff fails to set forth sufficient factual matters to state a plausible claim for relief "on its face"].

These same claims as asserted under Title VII, however, are not subject to dismissal, and may proceed.

## II.

## (Breach of Contract Claim)

In her Fourth Cause of Action, Plaintiff asserts a state law claim for breach of contract. Defendant asserts that this claim is subject to dismissal because Plaintiff has failed to set forth factual allegations sufficient to give rise to a plausible claim that she had an employment contract with the Defendant.

The necessary elements of a contract are an offer, acceptance, and valuable



consideration. <u>Roberts v. Gaskins</u>, 486 S.E.2d 771, 773 (S.C. 1997), citing <u>Carolina Amusement Co., Inc. v. Connecticut Nat'l Life Ins., Co.</u>, 437 S.E.2d 122 (S.C. Ct. App. 1993). With respect to employment, however, there is a presumption in South Carolina that employees are at-will, and therefore in order to survive a Rule 12 Motion to Dismiss on a claim for breach of a contract of employment, a Plaintiff must "plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship . . . .". <u>Perrine v. G4S Solutions (USA), Inc.</u>, No. 11-1210, 2011 WL 3563110, at * 2 (D.S.C. Aug. 9, 2011)["[T]here is a presumption in South Carolina that employees are at-will, and in order to survive a Rule 12 motion to dismiss on a claim for breach of a contract of employment, a Plaintiff must 'plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship . . . .'"], quoting <u>Amason v. P. K. Management, LLC</u>, No. 10-1752, 2011 WL 1100169, at * 6 (D.S.C. Mar. 23, 2011); <u>see</u> <u>also</u> <u>Prescott v. Farmer's Tel. Co-Op., Inc.</u>, 516 S.E.2d 923, 927, n. 8 (S.C. 1999)[In South Carolina, "there is a presumption of at-will employment"].

Plaintiff alleges in her Amended Complaint that beginning on May 10, 2010, she was employed by the Defendant for approximately one (1) year. <u>Amended Complaint</u>, ¶¶ 8-9. Plaintiff alleges in her Fourth Cause of Action that at the commencement of her employment she was issued an employee handbook known as *Our Code of Conduct*. Plaintiff alleges that the employee handbook did not include any disclaimer indicating that the employee handbook was not intended to create a contract of employment. Plaintiff further alleges that the Defendant's employee handbook contained policies and procedures that prohibited the Defendant from terminating employees due to an employee's gender, race, age, or disability, whether actual or perceived, that it promised that the Defendant would adhere to non-discrimination and non-retaliation policies, and that the Defendant's

6



promises as set forth in the employee handbook are stated in mandatory and promissary language and terms and, therefore, created an employment contract altering any at-will employment relationship that may have otherwise existed. Finally, Plaintiff alleges that the Defendant did not refrain from discriminating or retaliating against her, and that the Defendant had no substantial justification for Plaintiff's termination, thereby breaching Plaintiff's employment contract, entitling her to damages. See generally, Amended Complaint, ¶ ¶ 103-113.[6]

As noted, Defendant contends that these allegations are not sufficient to establish a plausible claim that a contract of employment existed between the parties, and that this cause of action should therefore be dismissed. Prescott, 516 S.E.2d at 927, n. 8 [In South Carolina, "there is a presumption of at-will employment"]; Perrine, 2011 WL 3563110, at * 2 [In order to survive a Rule 12 motion to dismiss on a claim for breach of a contract of employment, a Plaintiff must "plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship"]; see also Frey v. City of Herculaneum, 44 F.3d at 671 ["Complaint must contain facts which state a claim as a matter of law and must not be conclusory"]. Defendant has also provided a copy of the employee handbook itself as an attachment to its motion, and argues that there is nothing in this handbook which creates a contract of employment. See Defendant's motion, Attachments A and B.[7] After careful review of the allegations of the Complaint and the arguments

---

[6]Plaintiff's specific allegations concerning the alleged discriminatory and/or retaliatory treatment she received at the hands of the Defendant are set forth in the "Facts" section of the Amended Complaint, but do not need to be detailed here for purposes of the analysis of Plaintiff's breach of contract claim.

[7]In addition to factual allegations of the Complaint, the Court may also consider as part of the review of a 12(b) motion any document that is "integral to and explicitly relied on in the complaint."

(continued...)



presented, the undersigned is constrained to agree.

First, the allegations of the Complaint must themselves be sufficient to set forth a plausible claim that a contract of employment did exist. Francis, et al, v. Giacomelli, No. 08-1908, (4th Cir. Dec 2, 2009) [Plausibility standard met where the Plaintiff "articulate[s] facts , when accepted as true," that state a plausibility of entitlement to relief]; Dickson, 309 F.3d at 213 [Plaintiff has burden of alleging facts sufficient to state all the elements of a claim]; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)["While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . [f]actual allegations must be enough to raise a right to relief above the speculative level"]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Conclusory allegations insufficient to maintain claim]; see also Iqbal, 129 S.Ct. at 1949-1950 ["[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"]. Plaintiff's allegations fail to meet this standard. While Plaintiff alleges (and a review of the handbook itself confirms) that the handbook did not contain a conspicuous disclaimer stating that the employee handbook was not a contract of

---

[7](...continued)
Phillips v. LCI International, Inc., 190 F.3d 609, 618 (4th Cir. 1999); Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004); White v. VNA Homecare, Inc., No. 11-971, 2012 WL 1435432 at * 1 n. 1 (S.D.Ill. Apr. 25, 2012)[Since the handbook is a document referenced in plaintiff's complaint and is central to her claim, the court can consider it on Defendant's 12(b)(6) motion to dismiss]; McClurkin v. Champion Laboratories, Inc., No. 11-2401, 2011 WL 5402970 at * 2 (D.S.C. Nov. 8, 2011)[Attachment by Defendant of employee handbook did not convert motion to dismiss to a summary judgment motion where Plaintiff referred to employee handbook in her complaint]; cf. Smith v. McAlister-Smith Funeral Home, Inc., No. 11-3281, 2012 WL 4378185 at * 3 (D.S.C. Sept. 25, 2012)[Since Plaintiff neither attached or referenced the employee handbook in his operative complaint, the court may not consider the employee handbook that Plaintiff attached to memorandum in opposition to motion to dismiss, his objection to the Report and Recommendation, and his improperly filed amended complaint].



employment, this fact does not establish that a contract of employment existed. While a handbook disclaimer would obviously be important, it is not required if the employee handbook at issue otherwise does not contain mandatory language sufficient to alter the presumption in South Carolina of an at-will employee relationship. Cf. Grant v. Mount Vernon Mills, Inc., 634 S.E.2d 15, 20 (S.C.Ct.App. 2006); Westmoreland v. AB Beverage Co., Inc., No. 05-3475, 2007 WL 274950 at * 13 (D.S.C. Sept. 20, 2007).

Plaintiff has failed to allege in her complaint language from the employee handbook sufficient to establish a plausible claim that her at-will employment relationship was altered by any such language. See Dickson, 309 F.3d at 213 [Plaintiff has burden of alleging facts sufficient to state all the elements of a claim]. Rather, Plaintiff simply alleges that the employee handbook "contained policies and procedures that prohibited Defendant from terminating employees due to an employee's gender, race, age, or disability, whether actual or perceived", followed by allegations of purported language from the employee handbook, as follows:

> We will adhere to the Human Resources Harassment, Discrimination and Retaliation Policy [the language of which is not itself set forth in the Amended Complaint] . . . to ensure that the working environment is free from violent, intimidating and/or disruptive behaviors . . . our organization has zero tolerance for workplace violence, harassment, discrimination or retaliation and will take appropriate action if an investigation confirms that this has occurred . . . [and] there will be no retaliation against any employee who brings forward truthful complaints to our organization or any regulatory agency concerning workplace violence/safety, discrimination, harassment, retaliation or any other issue.

Amended Complaint, ¶ 108.

While Plaintiff argues that this alleged handbook language is sufficiently "mandatory" to state a plausible claim for relief for breach of contract, the cited language is typical of anti-discrimination language found in most employee handbooks, and has routinely been held not to, by

9



itself, constitute a contract. Cf. Ford v. Musashi S.C., Inc., No. 07-3734, 2008 WL 4414385 (D.S.C. Sept. 23, 2008), adopting in part and denying in part, 2008 WL 4414497, at * 3 (D.S.C. July 11, 2008)["[U]nder South Carolina law where an employee handbook provides a general policy statement of nondiscrimination such a 'provision does not constitute a promise altering the at-will employment relationship . . .'"]; Fyall v. ATC/Ancom of South Carolina, No. 04-23086, 2005 WL 2656962, at * 4 (D.S.C. Oct. 18, 2005] [same]; Hessenthaler v. Tri-County Sister Help, Inc., 616 S.E.2d 694, 698 (S.C. 2005), citing McKenzie v. Lunds, Inc., 63 F.Supp.2d 986, 1003 (D.Minn. 1999) and Cherella v. Phoenix Technologies, Ltd., 586 N.E.2d 29, 31 (Mass. 1992); King v. Marriott Int'l., Inc., 520 F.Supp.2d 748, 756 (D.S.C. 2007)[Finding that the Defendant's promise that "there will be no discrimination or recrimination against an employee who asserts a complaint against [the defendant] does not create an expectation that employment is guaranteed or that a particular process must be complied with before an employee is terminated"] (internal quotations omitted); Frasier v. Verizon Wireless, C.A., No. 08-356, 2008 WL 724037, at * 2 (D.S.C. Mar. 17, 2008). Rather, Plaintiff needs to show that she and the Defendant entered into mandatory and binding terms for her employment such as a definite term of employment, buyout provisions, right to severance pay, and other such indices of a contract of employment. Cf. Wadford v. Hartford Fire Ins. Co., No. 87-2872, 1988 WL 492127 at *5 (D.S.C. 1988) ["A review of the relevant authorities... reveals that a policy or representation must limit the duration of employment or the employer's right to terminate employment in order to alter at-will status. Other terms and conditions of employment, including pay, benefits, job duties, or location of performance may be changed prospectively by either party without violating an employment contract with an indefinite term."].

      The undersigned has both reviewed the handbook language cited by Plaintiff in her



Amended Complaint as well as undertaken an independent review of Defendant's Attachments A and B (attached to the motion to dismiss), and does not find any language sufficient to establish a plausible claim that Plaintiff had a "contract" of employment by virtue of this handbook. Cf. Small v. Springs Industries, Inc., 357 S.E.2d 452, 455 (S.C. 1987)[only policy drafted in sufficiently mandatory terms may serve to alter at-will employment status]; Grant, 634 S.E.2d at 21-22; Storms v. Goodyear Tire & Rubber Co., 775 F.Supp. 862, 867 (D.S.C. 1991) [noting that language cited by the employee was "not couched in mandatory terms and [did] not contain language that specifically [limited] the employer's right to demote or terminate [the Plaintiff] without cause"]; Horton v. Darby Electric Co., Inc., 599 S.E.2d 456, 460-461 (S.C. 2004) [Manual containing progressive disciplinary procedure did not alter employee's at-will status]. Therefore, the Defendant is entitled to dismissal of this cause of action. Amazon v. PK Management, LLC, 2011 WL 1100169, at * 6 (D.S.C. Mar. 23, 2011); cf. Williams v. Intier Automotive Interiors of America, Inc., No. 09-1144, 2010 WL 5811848 (D.S.C. Nov. 5 2010); see also Harper v. United States, 423 F.Supp. 192, 196 (D.S.C. 1976)["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"].

### III.

### (Payment of Wages Act Claim)

In her Fifth Cause of Action, Plaintiff alleges a violation of the South Carolina Payment of Wages Act, S.C.Code Ann. § 41-10-10, et seq. Specifically, Plaintiff alleges that the Defendant failed to pay her all of the wages that she earned while employed with the Defendant in a timely manner, in violation of the Payment of Wages Act, entitling her to this sum of money ($9,577.09) plus pre-judgment interest and attorneys fees and costs, as well as treble damages. See

11



Amended Complaint, ¶¶ 114-121.

The South Carolina Payment of Wages Act creates a cause of action against an employer by an employee for failure of the employer to pay wages as required under that Act. S.C.Code Ann. § 41-10-80(C). See Cooper v. Ameritex Yarn, LLC, No. 04-1580, 2005 WL 3240653 at * 4 (D.S.C. Nov. 28, 2005)[South Carolina Wage Payment Act protects employees from unjustified and willful retention of wages by the employer]. However, although the *implication* from a plain reading of the allegations of Plaintiff's Amended Complaint is that the Defendant never paid her the wages cited in the Complaint, Plaintiff's Attachment C[8] to the Complaint indicates that Plaintiff was actually paid those wages on or about April 29, 2011, and indeed Plaintiff does not dispute in her response brief that she received payment of these wages. Instead, Plaintiff argues that the fact that she did not receive these wages at the time they were due (i.e., incrementally at each pay period during her period of employment) in what entitles her to damages under the Wage Payment statute. Defendant contends that there is no evidence that these wages were withheld in bad faith, that it was the Defendant itself which discovered the error and brought it to Plaintiff's attention, that it paid Plaintiff the improperly withheld wages before she retained counsel or filed suit, and that since the penalty provisions of the Act are discretionary with the trial judge and subject to good faith exceptions, this claim should be dismissed.

However, Defendant's arguments are all *defenses* to Plaintiff's claim. At this stage of the proceedings, the only issue before the Court is whether the allegations of Plaintiff's Complaint state a plausible claim for relief "on its face". Iqbal, 129 S.Ct. at 1949. Plaintiff clearly alleges in

---

[8]See n. 7, supra.



her Amended Complaint that she was an employee as defined by the Payment of Wages Act, that the Defendant is an employer under that Act, and that the Defendant failed to pay her all of the wages that she had earned while employed with the Defendant in a timely manner, in violation of the Act. See Mathis v. Brown & Brown of S.C., Inc., 698 S.E.2d 773, 781 (S.C. 2010)[Noting that § 41-10-40 generally requires an employer to *timely* pay all wages due, and that under § 41-10-80(C) the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow]. Even though the allegations of the Complaint considered in conjunction with attached Exhibit C to the Complaint make it clear that Plaintiff did subsequently receive payment for the wages earned, the allegations of the Complaint nevertheless reflect that Plaintiff did not *timely* receive payment of these wages. Mathis, 698 S.E.2d at 782 ["The relevant date for determining whether the employer reasonably withheld wages is the time at which the wages were withheld; i.e., when the employer allegedly violated the Act"].

The Defendant is certainly correct that a good faith exception applies to the wage payment requirement, and that in any event whether damages are to be assessed is discretionary with the trial judge. Mathis, 698 S.E.2d at 681-682; see also Rice v. Multimedia, Inc., 465 S.E.2d 381, 384 (S.C. 1995). However, while the Court is skeptical as to whether any damages will be found to be appropriate here based on the arguments set forth by counsel in their briefs, this would be a matter of what the evidence shows and a decision by the finder of fact or of the Court on the merits. Again, however, that is not the analysis conducted when considering a Rule 12 motion to dismiss. Cf. Cooper, 2005 WL 3240653, at * 4 [Finding on *summary judgment* that the *evidence* did not show that the Defendants unjustifiably retained any of Plaintiff's wages, and entering judgment for the

13



Defendants on Plaintiff's Wage Payment Act claim]. Since the allegations of the Complaint reflect that Plaintiff was not paid earned wages when due, this claim is not subject to dismissal on a Rule 12 motion. Vogt v. Greenmarine Holding, LLC, 318 F.Supp.2d 146 (S.D.N.Y. 2004)[Finding that Plaintiffs had asserted sufficient facts to allege improper conduct by the named defendants, and that "[w]hether plaintiffs will be able to demonstrate the truth of those facts after discovery is an entirely different question, but plaintiffs are entitled to make the attempt"]; see also Austen v. Catterton Partners V, LP, 709 F.Supp.2d 172 (D.Conn. 2010) [Iqbal's plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely"], citing Twombly, (internal quotation marks and citations omitted).

## IV.

### (Exclusivity Provision of the South Carolina Workers Compensation Act)

Plaintiff's Amended Complaint also includes state law claims for false imprisonment (Seventh Cause of Action), abuse of process (Eighth Cause of Action), and intentional infliction of emotional distress (Tenth Cause of Action). Defendant argues that all three of these causes of action are barred by the exclusivity provision of the South Carolina Workers Compensation Act, S.C.Code Ann. § 42-1-540, as amended, which provides as follows:

> The rights and remedies granted by this Title to an employee when he and his employer have accepted the provisions of this Title, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all of the rights and remedies of such employee, . . . . as against his employer, at common law, or otherwise, on account of such injury, loss of service or death.



S.C. Code Ann. § 42-1-540.

Plaintiff concedes that the Workers Compensation Act is the exclusive means of pursuing personal injury claims which fall under that Act. However, Plaintiff argues that her claims for intentional infliction of emotional distress, false imprisonment, and abuse of process did not occur within the scope of her employment, and are therefore not barred by the Act's exclusivity provision, citing to <u>Fotia v. Palmetto Behavioral Health</u>, 317 F.Supp. 2d 638, 645 (D.S.C. 2004)[Exclusivity provisions of Workers Compensation Act do not bar a former employee's suit against an employer for injuries that did not occur within the scope of employment]. After careful consideration of the allegations of the Amended Complaint in conjunction with the applicable caselaw, the undersigned finds and concludes that Defendant's motion should be both granted and denied, in part, with respect to these claims.

First, the South Carolina Supreme Court has specifically held that claims for intentional infliction of emotional distress arising out of a Plaintiff's employment are subject to and barred by the South Carolina Workers Compensation Act. <u>Dickert v. Metropolitan Life Ins. Co.</u>, 428 S.E.2d 700, 701 (S.C. 1993)[Intentional infliction of emotional distress is within the scope of the Act]; <u>McClain v. Pactive Corp.</u>, 602 S.E.2d 87, 89 (S.C.Ct. App. 2004)["[I]ntentional infliction of emotional distress constitutes a personal injury that falls within the scope of the Act."]; <u>Palmer v. House of Blues Myrtle Beach Restaurant Corp.</u>, No. 05-3301, 2006 WL 2708278 (D.S.C. Sept. 20, 2006). All of the conduct Plaintiff cites to in her Tenth Cause of Action for emotional distress relates to her employment or occurred during her period of employment with the Defendant, except



for the retaliatory complaint the Defendant allegedly filed against the Plaintiff with the LLR,[9] which occurred *after* Plaintiff had already been terminated and was no longer an employee of the Defendant.  See Amended Complaint, ¶ ¶ 69-74.  Therefore, the Defendant is not entitled to dismissal of Plaintiff's claim for intentional infliction of emotional distress based on the exclusivity provision of the Workers Compensation Act with respect to that one portion of her claim, but is entitled to dismissal of the remainder of Plaintiff's claim for intentional infliction of emotional distress.

With respect to Plaintiff's abuse of process claim, this claim also relates solely to the allegedly retaliatory complaint the Defendant filed against Plaintiff with the LLR Board.  See Amended Complaint, ¶ ¶ 136-141.  Therefore, this cause of action is also not subject to dismissal under the exclusivity provision of the South Carolina Workers Compensation Act.[10]

Finally, with respect to Plaintiff's claim for false imprisonment, even the Defendant concedes that another case in this district, Frasier v. Verizon Wireless, No. 08-356, 2008 WL 724037 (D.S.C. Mar. 17, 2008), held that a claim of false imprisonment is not subject to the Workers Compensation exclusivity provision.  Id., at * 3.  While that decision is not binding on this Court,

---

[9]South Carolina Labor, Licensing and Review Board.

[10]Defendant argues that Plaintiff's abuse of process claim should be subject to the exclusivity provision in part because Plaintiff alleges that the filing of a complaint with the LLR was used as a threat in an attempt to coerce Plaintiff into resigning, which "constitute[d] improper use of a regularly issued process by Defendant against Plaintiff", thereby making it part of Plaintiff's employment.  See Amended Complaint, ¶ 139.  However, notwithstanding this allegation, the actual process of proceeding with the filing of the complaint against the Plaintiff with the LLR occurred after Plaintiff was no longer an employee of the Defendant.  While Defendant may be correct that this cause of action is therefore duplicative of Plaintiff's separate cause of action for malicious prosecution, that does not make it subject to dismissal pursuant to the exclusivity provision of the Workers Compensation Act.



and the Defendant notes, <u>inter alia</u>, that the South Carolina Supreme Court has not yet ruled on this issue, the undersigned can discern no reason to deviate from the holding of the Court in <u>Frasier</u> at this time. Therefore, Defendant is also not entitled to dismissal of Plaintiff's false imprisonment claim on the basis of the Workers Compensation Act exclusivity provision.

## V.

## (Merits of False Imprisonment Claim)

Defendant also argues that Plaintiff's claim for false imprisonment fails because Plaintiff has failed to allege either imprisonment or confinement, necessary elements of this claim. "False imprisonment is the deprivation of one's liberty without justification"; <u>Jones v. Winn-Dixie Greenville, Inc.</u>, 456 S.E.2d 429, 432 (S.C.Ct. App. 1995); and to avoid a Rule 12 dismissal of her false imprisonment claim, Plaintiff must have set forth factual allegations sufficient to state a plausible claim that 1) the Defendant restrained her; 2) the restraint was intentional; and 3) the restraint was unlawful. <u>Id</u>.; <u>see</u> <u>also</u> <u>Andrews v. Piedmont Airlines</u>, 377 S.E.2d 127 (S.C.Ct. App. 1989).

Plaintiff's false imprisonment claim is predicated on two alleged actions by the Defendant: being placed in a room and in a taxi cab. Specifically, Plaintiff's allegations are as follows: On March 18, 2011, Plaintiff was confronted at the nurse's station by her head supervisor, who accused Plaintiff of "diverting drugs" and told Plaintiff she would have to go with her and provide a drug test. Plaintiff alleges that she was then physically escorted by her supervisor and another nurse away from the nurse's station and then physically escorted to a room in the administrative area on the first floor where a Lab Corp. technician conducted a urine drug test on her. <u>Amended Complaint</u>, ¶¶ 26-29. Thereafter, her supervisor ordered a security guard to physically



force Plaintiff down the stairs through the front entrance and out of the hospital into a taxi outside

of the hospital, and physically prohibited her from taking her own car home. Plaintiff alleges that

the security guard confined Plaintiff and escorted her down the stairs by way of force and

intimidation in the presence of third parties; that the security guard, house supervisor, and ICU nurse

forcefully escorted her outside the hospital and then continued to hold her there against her will until

a taxi arrived, whereupon the security guard then forced Plaintiff into the taxi against her will and

ordered the taxi driver to take Plaintiff to her home and to not let her out of the cab until she arrived

at her home. Id., ¶ ¶ 37-40.

Plaintiff alleges that the Defendant's conduct restrained her by way of words, acts,

and the use of force by confining her in a room for an unreasonable period of time for the alleged

purpose of testing her for drugs, and thereafter further restrained her without authorization or consent

by physically escorting her outside of the hospital and into a taxi and by refusing to allow her to drive

her own personal vehicle home, all against her will. Plaintiff alleges that the Defendant's conduct

constituted an unlawful restraint, that the Defendant had no legitimate business purpose for its

actions, nor was the Defendant's conduct made in good faith. Id., ¶ ¶ 129-133. See also Amended

Complaint, attached Exhibit A, p. 2. These allegations are sufficient to set forth a claim for false

imprisonment, as they allege that Plaintiff was restrained by the Defendant, that her restraint was

intentional, and that the restraint was at least potentially unlawful. Jones, 456 S.E.2d at 432 ["False

imprisonment may be committed by words alone, or by acts alone or by both, and by merely

operating on the will of the individual . . . ."].

Defendant offers several arguments for why this claim should be dismissed, including

that an employer has a right to require an employee to leave its property, citing to Wright v. United



Parcel Service, Inc., 445 S.E.2d 657 (S.C.Ct. App. 1994). However, Plaintiff correctly notes that that case involved an individual who remained on the employer's property after being told to leave. Id., at 659 ["Although the entry by a person on the premises of another may initially be lawful, the person becomes a trespasser when the person fails to depart after being asked by the owner to leave"]. Plaintiff's Complaint contains no allegations that she refused to leave the premises after being asked to do so. Defendant also argues that Plaintiff voluntarily agreed to submit to a drug test, and that there is no allegation that the doors to the room in which she was kept were locked or that the Plaintiff did not have the option of leaving. However, that is expressly *not* what the Plaintiff alleges. To the contrary, Plaintiff alleges that she was physically escorted away from her duty station "as if she were a criminal" down to the room where the drug test was administered, and that she was thereafter confined in that room for an unreasonable period of time "by way of words, acts, and the use of force against her". The arguments Defendant makes are *defenses* to Plaintiff's allegations, which may properly be asserted in a Rule 56 motion for summary judgment with supporting evidence at the appropriate time. They are not, however, a basis for a dismissal of Plaintiff's false imprisonment claim on a Rule 12 motion to dismiss. Mediacom Southeast LLC v BellSouth Telecommunications, Inc., No. 10-6117, 2012 WL 678166, at * 4 (6th Cir. Oct. 6, 2011)[crediting the Defendant's, rather than the Plaintiff's, version of the facts unduly raises the pleading standard beyond the heightened level of Iqbal]; see also Twombly, 550 U.S. at 555 [A complaint attacked by a Rule 12 motion to dismiss does not need detailed factual allegations; rather, the factual allegations must only be enough to raise a right to relief above the speculative level].

Defendant's motion is simply premature. The Court has no evidence before it at this time and cannot dismiss Plaintiff' Complaint on the basis of Defendant's arguments justifying its

19



actions. <u>Slade v. Hampton Roads Regional Jail</u>, 407 F.3d 243, 248 (4th Cir. 2005)["Courts should not dismiss a complaint for failure to state a claim unless 'after accepting all well-pleaded allegations in the Plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief'"], citing <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999). Therefore, the Defendant is not entitled to dismissal of Plaintiff's false imprisonment claim at this time. <u>Francis, et al,</u>, No. 08-1908 [Plausibility standard met where the Plaintiff "articulate[s] facts , when accepted as true," that state a plausibility of entitlement to relief]; <u>Vogt</u>, 318 F.Supp.2d at 146 [Finding that Plaintiffs had asserted sufficient facts to allege improper conduct by the named defendants, and that "[w]hether plaintiffs will be able to demonstrate the truth of those facts after discovery is an entirely different question, but plaintiffs are entitled to make the attempt"].

## VI.

**(Other Arguments for Dismissal of Plaintiff's Claims for Malicious Prosecution and Abuse of Process)**

Defendant also contends that it is statutorily immune from suit under these two causes of action because, pursuant to state law, the filing of a complaint with the LLR Board about a nurse or any other information about such a complaint is confidential, that as a result of state law it cannot effectively defend itself against Plaintiff's claims because it is prohibited from even discussing the complaint at issue, and that therefore to allow these claims to go forward would be a violation of the Defendant's due process rights. <u>See</u> <u>generally</u>, S.C.Code Ann. § 40-33-190(A), as amended [Stating that no person connected with any complaint, investigation or other proceeding before a disciplinary or licensing board may mention the existence of the complaint, investigation, or other proceeding, or disclose any information relating thereto]. However, the statutory privilege Defendant asserts is

20



not an absolute immunity from suit. Rather, it is a qualified immunity. While S.C.Code Ann. § 40-1-190(A) does provide that a communication to a licensing board to investigate or hear matters relating to discipline of a licensee is privileged and that no action may be brought against the person by on whose behalf the communication is made, this immunity specifically does not apply to communications made with malice. <u>See</u> S.C.Code Ann. § 40-33-190(A); <u>see also</u> <u>Hainer v. American Medical International, Inc.</u>, 492 S.E.2d 103, 107 (S.C. 1997)[Where a Plaintiff demonstrates the Defendant acted with common law actual malice, the privilege does not apply].

Plaintiff alleges in her Amended Complaint that the Defendant's claim that she had engaged in improper conduct was patently false and without merit, was both malicious and defamatory, and that the Defendant's filing of a complaint with the LLR Board was in retaliation for her complaining to human resources and refusing to resign and for the ulterior purpose of harassing, humiliating, and damaging Plaintiff personally and in her professional standing. <u>See</u> <u>Complaint</u>, ¶¶ 145-149. These allegations sufficiently allege that the Defendant's conduct was motivated by common law actual malice to state a plausible claim that any privilege the Defendant may have enjoyed does not apply in this case. <u>Hainer</u>, 492 S.E.2d at 107 ["Common law actual malice has . . . been defined as meaning 'the defendant was actuated by ill will in what he did, with the design to causelessly and wantonly injure the plaintiff; or that the statements were published with such recklessness as to show a conscious indifference towards plaintiff's right'"], quoting <u>Jones v. Garner</u>, 158 S.E.2d 909 (S.C. 1968). This argument is therefore without merit.

Defendant also contends that Plaintiff has failed to allege the essential elements of an abuse of process claim, because Plaintiff has failed "to allege any process, fail[ed] to allege improper use of process after process has been issued, and fail[ed] to allege an improper willful act



in the use of process." <u>Defendant's Brief</u>, p. 24. However, Plaintiff clearly alleges in the Amended Complaint that state law provides a process for reporting incidents of misconduct or incapacity to the State Board of Nursing and the time frame in which such reports are to be made. <u>Amended Complaint</u>, ¶ 43. Plaintiff further alleges that the Defendant misused this process and the investigative scheme provided by state law for an improper purpose and that in doing so the Defendant failed to comply with the mandatory time periods provided by state law. <u>Id.</u>, ¶¶ 44-46, 59, 70-72, 138-139, 144-145, 147-148.

"The essential elements of abuse of process are an ulterior purpose and a willful act in the use of the process not proper in the conduct of the proceeding". <u>Hainer</u>, 492 S.E.2d at 107. Notably, "[t]he improper purpose usually takes the form of coercion to obtain a collateral advantage", and Plaintiff specifically alleges that she was threatened with the use of this process if she did not voluntarily resign. <u>Hainer</u>, 492 S.E.2d at 107; <u>see</u> <u>Amended Complaint</u>, ¶ 139. Further, the process at issue does not, as asserted by the Defendant in its brief, have to be a "judicial" process. <u>Hainer</u>, 492 S.E.2d at 105-108. Nor does <u>Hainer</u> stand for the proposition that an abuse of process claim only applies where there is improper use of the process *after* it has been issued; <u>Hainer</u>, 492 S.E.2d at 107, n. 10 [Declining to decide whether a claim for abuse of process will lie in cases where the willful act occurs prior to the institution of proceedings]; but even if it did, Plaintiff's allegation is that the Defendant provided the information and evidence that was used by the LLR during its investigation, all of which the Defendant knew to be false and was submitted for an improper purpose, which would certainly support a claim of abuse of process. <u>Hainer</u>, 492 S.E.2d at 107 ["Abuse of process requires both an ulterior purpose and a willful act not proper in the regular course of the proceeding"]. In any event, even the Defendant concedes that "coercive or extortionate acts



that cause process to issue in the first instance" can support an abuse of process claim. <u>Defendant's Brief</u>, pp. 25-26, citing <u>Food Lion, Inc. v. United Food & Commercial Workers Intern. Union</u>, 567 S.E.2d 251, 254 (S.C.Ct. App. 2002). Again, at this stage of the proceedings, the Court only considers whether the allegations of the Complaint itself are sufficient to state the claim asserted.[11] <u>Brooks v. Ross</u>, 578 F.3d 574, 581 (7th Cir. 2009)[requirement is that Plaintiff's allegations provide sufficient notice to defendants of the plaintiff's claim]; <u>Austen</u>, 709 F.Supp.2d at 172 [Plaintiff required to provide adequate notice to the defendant of the basis for the lawsuit and to make a claim plausible]. Therefore, Defendant is not entitled to dismissal of Plaintiff's abuse of process claim at this time.

Finally, Defendant asserts that Plaintiff's cause of action for malicious prosecution fails because Plaintiff does not allege a prosecution, and that in any event she has failed to set forth the necessary elements for maintenance of this claim. The elements of a malicious prosecution claim are the initiation or maintenance of a proceeding by the defendant with malice and without probable cause to support it, and that the matter was terminated in the Plaintiff's favor. <u>Jordan v. Deese</u>, 452 S.E.2d 838, 839 (S.C. 1995); <u>Law v. South Carolina Dept. of Corrections</u>, 629 S.E.2d 642, 648 (S.C. 2006). Plaintiff has clearly alleged the institution or continuation of proceedings against her at the instance of the Defendant, that there was malice in instituting such proceedings and that the charges set forth therein were without merit and lacking probable cause, as well as that she suffered injury to her personal and professional reputation as a result thereof. <u>See</u> <u>Plaintiff's Complaint</u>, ¶ ¶ 143-

---

[11] It is noted that while the court in <u>Hainer</u> dismissed the Plaintiff's abuse of process claim, that dismissal was only after review of the *evidence* relating to this claim on a motion for summary judgment. <u>Hainer</u>, 492 S.E.2d at 108. Here, there is no evidence for the Court to review concerning the merits of Plaintiff's claim. Defendant's motion is premature.



149.

Nevertheless, Defendant argues that Plaintiff's malicious prosecution claim fails because the proceeding at issue does not amount to a "prosecution", because the prosecution at issue must be a judicial proceeding. However, it is clear that the tort of malicious prosecution applies to civil as well as criminal proceedings, and the LLR proceeding was certainly a civil proceeding. While Defendant argues that South Carolina has not recognized that a malicious prosecution claim can lie for institution of such an administrative proceeding, it has provided no case law to support this assertion, and absent controlling South Carolina caselaw to the contrary, the undersigned does not find that the civil proceeding necessary to maintain a malicious prosecution claim has to be a "judicial" proceeding; i.e., a court proceeding. 52 Am.Jur.2d Malicious Prosecution § 15 [Initiation of proceedings before an administrative board that has the power to take an action of a judicial nature (that is, it adversely affects legally protected rights) may be subject to an action for malicious prosecution]; cf. Hubbard and Felix, *The South Carolina Law of Tort*, 496 (2011).

Plaintiff also argues that it is the LLR Board that actually made or makes the decision as to whether or not to bring formal proceedings against a licensee. However, that does not change the fact that Plaintiff has alleged that it was the Defendant that caused the initiation of these proceedings by filing false and malicious charges against her, which is arguably part of the "process" provided by State law for handling these matters. Indeed, it is not clear that the licensing board even made the decision to bring formal proceedings against the Plaintiff based on the charges filed by the Defendant, as Plaintiff alleges that the drug abuse counselor assigned by the LLR to investigate and interview the Plaintiff as to the Defendant's drug abuse allegations found that Plaintiff had not stolen or taken any drugs, as the Defendant had alleged. Amended Complaint, ¶ 74. Pursuant to this

24



allegation, Plaintiff has also met the requirement that the proceedings at issue were resolved in her favor.  Id.; see also ¶ 146.

While the Defendant argues in its brief that there is no record of any administrative proceeding for which a malicious prosecution charge would be justified, and that there is also an "inference" in Plaintiff's allegations that there may have been a settlement with the LLR, which would not be a resolution in the Plaintiff's favor, again, these are all matters of evidentiary proof that the Defendant can raise, if warranted and at the proper time, in a Rule 56 motion for summary judgment.  That is not the question or issue before the Court on a Rule 12 motion to dismiss. Twombly, 550 U.S. at 555 [A complaint attacked by a Rule 12 motion to dismiss does not need detailed factual allegations; rather, the factual allegations must only be enough to raise a right to relief above the speculative level]; Francis, et al, No. 08-1908, [Plausibility standard met where the Plaintiff "articulate[s] facts , when accepted as true," that state a plausibility of entitlement to relief]; Vogt, 318 F.Supp.2d at 146 [Finding that Plaintiffs had asserted sufficient facts to allege improper conduct by the named defendants, and that "[w]hether plaintiffs will be able to demonstrate the truth of those facts after discovery is an entirely different question, but plaintiffs are entitled to make the attempt"]; see also Austen, 709 F.Supp.2d at 171 [Iqbal's plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].  This argument is therefore without merit.

### Conclusion

Based on the foregoing, it is recommended that the Defendant's motion to dismiss be **granted**, in part, and **denied**, in part.



For the reasons set forth hereinabove, Defendant's motion should be **granted** with respect to Plaintiff's First and Third Causes of Action in so much as those causes of action assert claims under the South Carolina Human Affairs Law. Defendant's motion should also be **granted** with respect to Plaintiff's Fourth Cause of Action for Breach of Contract, and with respect to Plaintiff's claims in her Tenth Cause of Action as relate to intentional infliction of emotional distress for conduct which occurred prior to her termination (to include her termination), but not with respect to her emotional distress claim as relates to the allegedly retaliatory complaint filed against Plaintiff with the LLR Board.

In all other respects, Defendant's motion to dismiss should be **denied.**

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

November 9, 2012
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

