# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| Paula Young, ) | |
| ) | |
| Plaintiff, ) | No. 2:12-cv-2337RMG |
| vs. ) | |
| ) | **ORDER** |
| Roper St. Francis Healthcare, ) | |
| ) | |
| Defendant. ) | |

This matter comes before the Court on Defendant Roper St. Francis Healthcare's motion to dismiss certain claims from Plaintiff Paula Young's complaint. (Dkt. No. 5). Plaintiff filed this action in state court on May 21, 2012, alleging ten causes of action relating to the circumstances of her termination by her former employer, Defendant. (Dkt. No. 1-1). The case was removed to this Court under federal question jurisdiction, on August 15, 2012, (Dkt. No. 1), and was automatically referred to a Magistrate Judge for all pre-trial proceedings, in accordance with 28 U.S.C. § 636(b)(1)(A), (B), and Local Rule 73.02(B)(2)(g), D.S.C.

## Background

On August 15, 2012, Defendant moved to dismiss several of Plaintiff's claims under Federal Rule of Civil Procedure 12. (Dkt. No. 5).[1] Plaintiff responded in opposition on September 4, 2012,

---

[1] Specifically, Defendant moved to dismiss Plaintiff's claims of race discrimination under Title VII, discrimination and retaliation under the South Carolina Human Affairs Law, breach of contract, a violation of South Carolina's Payment of Wages Act, false imprisonment, abuse of process, malicious prosecution, and intentional infliction of emotional distress. (Dkt. No. 5). Defendant subsequently withdrew its motion with respect to Plaintiff's Title VII race discrimination claims. (Dkt. No. 11).

(Dkt. No. 10), and Defendant replied on September 13, 2012, (Dkt. No. 11).

On November 9, 2012, the Magistrate Judge issued his Report and Recommendation ("R&R"), recommending that Defendant's motion should be granted in part and denied in part. (Dkt. No. 12 at 26). Specifically, the Magistrate Judge recommended that the motion to dismiss be granted with respect to: (1) Plaintiff's claims of race discrimination and retaliation under the South Carolina Human Affairs Law ("SCHAL"); (2) Plaintiff's claim for breach of contract; and (3) Plaintiff's claim of intentional infliction of emotional distress for conduct occurring prior to and including her termination. (*Id.*). In all other respects, the Magistrate Judge recommended the motion be denied. (*Id.*). Defendant timely filed objections to the R&R, (Dkt. No. 27), while Plaintiff filed no objections.[2]

**Legal Standard**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–271 (1976). The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal

---

[2] In the absence of specific objections to the Report and Recommendation, this Court is not required to give any explanation for adopting the Magistrate Judge's analysis and recommendations. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983). In relation to the issues on which the Magistrate Judge recommended granting dismissal, the Court has carefully reviewed the Magistrate Judge's summary of the allegations and his analysis in light of the pertinent case law. The Court finds the Magistrate Judge's summary accurate and his analysis correct. Accordingly, the Court adopts the Magistrate Judge's recommendations with respect to the claims for which he recommended dismissal.

sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of the defenses . . . . [The] inquiry then is limited to whether the allegations constitute a 'short and plain statement of the claim showing the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact than can be proved, consistent with the complaint's allegations. *E. Shore Mkts. Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 1980). However, while the Court must accept the facts in a light most favorable to the non-moving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

## Discussion

Defendant raised several objections to the Magistrate Judge's recommendations. (Dkt. No. 27-1 at 2-3). The Court will address the objections *in seriatim*.

### A. Plaintiff's Claim Arising Under the South Carolina Payment of Wages Act, S.C. Code § 41-10-10 *et seq.*

Defendant argues that the Magistrate Judge erred in concluding that Plaintiff has stated a claim adequately alleging a violation of the South Carolina Payment of Wages Act, S.C. Code § 41-10-10 *et seq*. Plaintiff alleges that Defendant failed to pay her certain wages totaling $9,577.09 in a timely fashion, and makes a claim for that amount plus pre-judgment interest, fees and costs, and treble damages. (Dkt. No. 25 at 19). As Defendant puts it, "Plaintiff does not allege that she was not paid, only that she was paid a portion of her pay late" due to Defendant's clerical error. (Dkt. No. 27-1 at 6). The question is whether that allegation is enough to sustain the claim at this stage in the litigation.

The Magistrate Judge concluded that it is. Though he expressed skepticism that Plaintiff will recover damages on the claim, he nonetheless concluded that the claim is not subject to dismissal because "the allegations of the Complaint reflect that Plaintiff was not paid earned wages when due," and those allegations support a claim under § 41-10-40. The issues of Defendant's good faith and damages, the Magistrate Judge concluded, should be decided by a factfinder evaluating the evidence, not at the motion to dismiss stage.

Defendant disagrees with the Magistrate Judge's conclusion, arguing that the claim fails because Plaintiff has been paid all sums due, while she never "demanded payment or even inquired about non-payment" and was never "forced to resort to the court" to secure payment. (Dkt. No. 27-1 at 8). Thus, Defendant disputes that Plaintiff alleged facts sufficient to support her claim, given the lack of any allegation of unreasonableness or bad faith on the part of Defendant in addition to the documentary evidence of Defendant's affirmative effort to pay the back wages. (*Id.* at 8-9).

The Court concludes that Plaintiff has stated a viable claim under the Payment of Wages Act. The state Supreme Court has clarified that "[t]he relevant date for determining whether the employer reasonably withheld wages is the time at which the wages were withheld, *i.e.*, when the employer allegedly violated the Act." *Mathis v. Brown & Brown of S.C., Inc.*, 698 S.E.2d 773, 782 (S.C. 2010). Thus, this Payment of Wages Act claim hinges on whether, at the time Defendant did not timely pay Plaintiff's wages, Defendant "had a reasonable good faith reason for doing so." *Id.* Plaintiff has adequately stated a claim that Defendant did not. The fact that Defendant subsequently brought the error to Plaintiff's attention and paid the back wages, (Dkt. No. 25-3), is evidence that Defendant may have acted in good faith at the time the wages were withheld; but it is not conclusive. After all, Plaintiff had filed an internal complaint of discrimination to the human resources

department only eleven days prior to the wage error being discovered, (Dkt. No. 25-1) and Plaintiff was terminated six weeks later, (Dkt. No 25-4). As the Magistrate Judge observed, "this is a matter of what the evidence shows," requiring "a decision by the finder of fact or of the Court on the merits." (Dkt. No. 20 at 13). Dismissal is therefore inappropriate.

B. Plaintiff's Claim of False Imprisonment

Defendant next argues that Plaintiff's false imprisonment claim is barred by the exclusivity provision of the South Carolina Workers' Compensation Act, S.C. Code § 42-1-540. (Dkt. No 27-1 at 9). The Act's exclusivity provision makes claims under the Act the "exclusive means of settling personal injury claims which come under the Act." *Loges v. Mack Trucks, Inc.*, 417 S.E.2d 538, 540 (S.C. 1992). The Magistrate Judge followed the holding in *Frasier v. Verizon Wireless*, No. 8:08-356, 2008 WL 724037, at *3 (D.S.C. Mar. 17, 2008), that the exclusivity provision did not apply to bar a false imprisonment claim because such a claim does not qualify as a compensable injury under the state's Worker's Compensation Act. (Dkt. No. 20 at 17). The Court finds the reasoning of *Frasier* to be persuasive and denies Defendant's motion to dismiss Plaintiff's false imprisonment claim.

C. Scope of Immunity for Reporting Alleged Misconduct to the State Board of Nursing

Plaintiff has asserted claims for malicious prosecution and abuse of process arising from the Defendant's alleged reporting of knowingly false information to the State Board of Nursing after Plaintiff refused Defendant's demand that she resign from her position of employment. Plaintiff asserts that such alleged conduct falls outside the scope of the statutorily-granted qualified immunity for the reporting of information to a licensing board, which exempts any communication made with malice. S.C. Code § 40-1-190(A); *see also* S.C. Code § 40-1-190(B) (stating that nothing in § 40-1-

190 "may be construed as prohibiting the respondent or the respondent's legal counsel from exercising the respondent's constitutional right of due process under the law"). Defendant argues that, in addition to the qualified immunity provided under § 40-1-190(A), there is also an implied absolute immunity under the Nursing Practices Act because there exists a provision, S.C. Code § 40-33-190, prohibiting any person making a report to disclose any information relating to the complaint. Defendant reasons that if it cannot disclose the communication, it could not provide a defense, thereby requiring absolute immunity. (Dkt. No. 27-1 at 12).

The Court finds Defendant's argument of implied absolute immunity to be inconsistent with the explicit statutorily-granted provision of qualified immunity under § 40-1-190. Had the General Assembly intended to grant any reporter of information to a licensing board absolute immunity, it clearly knew how to do so, and more directly. This Court declines to imply the existence of absolute immunity from a general confidentiality provision of the State Nursing Practices Act, where the Legislature created an express qualified immunity elsewhere in the Title. Therefore, the Court denies the Defendant's motion to dismiss.

### d. Plaintiff's Claim of Abuse of Process

Defendant raises three arguments for why Plaintiff failed to state a viable claim for abuse of process: (1) a claim for abuse of process must be based on an abuse of judicial process; (2) Plaintiff's allegations of improper acts do not support an abuse of process claim; and (3) the claim is barred by the Workers' Compensation Act's exclusivity provision, to the extent the claim relies on actions taken during Plaintiff's employment. (Dkt. No. 27-1 at 13-21). As set forth below, the Court finds no merit to these arguments and denies Defendant's motion to dismiss Plaintiff's abuse of process claim.

First, Defendant argues that Plaintiff has not alleged facts that satisfy the elements of an abuse of process claim, on the ground that such a claim must involve a "judicial process" and no formal complaint has been brought against Plaintiff as a result of Defendant's initial complaint to the LLR's Board of Nursing. (*Id.* at 15-19). The Magistrate Judge rejected that contention, citing *Hainer v. American Medical International, Inc.*, 492 S.E.2d 103, 107 (S.C. 1997). (Dkt. No. 20 at 22).[3] The filing of a complaint to the Board of Nursing is a potentially serious matter, as it can be the first step in a quasi-judicial administrative process that results in the revocation of nurse's license.[4] As a result, the Court concludes that the filing of such a complaint can amount to a use of process that can be abused.

Second, Defendant argues that Plaintiff has not alleged improper acts that can support an abuse of process claim, and disputes the Magistrate Judge's conclusion to the contrary. (Dkt. No. 27-1 at 19-20). Specifically, Defendant argues that an alleged threat with the use of process if an employee fails to resign is not an improper act, nor is the provision of allegedly false information

---

[3] In *Hainer*, the state Supreme Court affirmed a directed verdict for the defendant-employer where there was "absolutely no evidence in the record that [the employer had] in any way threatened, coerced, harassed, or otherwise contacted" the plaintiff. *Id.* at 108. In reaching that conclusion, however, the *Hainer* Court found it notable that the plaintiff "did not testify that she was 'threatened' *with a complaint to the Board.*" *Id.* (emphasis added). There was no suggestion in *Hainer* that filing a complaint to the Board of Nursing was not a form of "process" able to sustain an abuse of process claim, though, under Defendant's view, that would have been a preliminary question on which to dispose of the claim.

[4] Defendant also appears to argue that the "process" only commences when a formal complaint is filed pursuant to 26 S.C. Code. § 19-91g. But while the initial complaint to the Board may seem preliminary, it is no less a part of a "process" than a store "manager's directive to call the police, which resulted in the employment of the criminal process" on an accused shoplifter. *See Food Lion, Inc. v. United Food Commercial Workers Int'l Union*, 567 S.E.2d 251, 254 n.3 (S.C. Ct. App. 2002). In both cases, an abuse at the start could infect the entire action. *See id.*

to the LLR. (*Id.* at 19). An abuse of process claim requires only some definite act or threat not authorized by the process, or aimed at an object not legitimate in the use of the process. *See* 1 S.C. Jur. Attorney and Client § 76 (Dec. 2012). As explained by the Magistrate Judge, that requirement is met here.

Defendant argues that *Russell v. Risher*, 249 S.E.2d 908, 909 (S.C. 1978) "is directly contrary" to that conclusion, (Dkt. No. 27-1 at 19), but this Court disagrees. In *Russell*, the defendant in the abuse of process counterclaim had threatened to bring an action to seek satisfaction for what was, undisputedly, plaintiff's actual conduct. The state Supreme Court therefore interpreted that threat of well-founded legal action as a valid form of settlement negotiation. In contrast, here, Plaintiff alleges that Defendant threatened to bring a complaint based on false statements against her in an effort to get her to resign without cause, and then did provide those false statements to the Board. The law of South Carolina appears to remain unclear as to whether coercion by way of the threat to provide false information to the Board may by itself constitute a willful act sufficient to support a claim. *See Hainer*, 492 S.E.2d at 107 n.10 (reserving that question). But there is no doubt that the inclusion of false statements as part of a complaint brought for a reason unrelated to the Board's purposes would pervert the administrative process, and that such action therefore provides the willful act necessary to support the claim at this stage.[5]

Third, Defendant argues that the exclusivity provision of the South Carolina Workers' Compensation Act applies to bar "any claim of mental anguish arising from the alleged threat" to

---

[5] That is why the "bad intentions" of a defendant do not by themselves support an abuse of process claim, *First Union Mort. Corp. v. Thomas*, 451 S.E.2d 907, 915 (S.C. Ct. App. 1994)—indeed, the intentions of the House Speaker in *Russell* seem less than kind—but instead this claim requires the use (or rather, misuse) of the process itself.

file a complaint with LLR. (Dkt. No. 27-1 at 21). However, as the Magistrate Judge correctly observed, "the actual process of proceeding with the filing of the [allegedly false] complaint against the Plaintiff with the LLR occurred after Plaintiff was no longer an employee of the Defendant." (Dkt. No. 20 at 16 n.10). As a result, this claim is not barred by the exclusivity provision.[6]

### E. Plaintiff's Claim of Malicious Prosecution:

The Magistrate Judge found that Plaintiff had made sufficient allegations to state a plausible claim for malicious prosecution against Defendant. (Dkt. No. 20 at 23-25). Defendant raises two objections to the Magistrate Judge's analysis of the malicious prosecution claim. First, though Defendant agrees that "an administrative proceeding can be judicial in nature," Defendant nonetheless argues that the claim should be dismissed because "South Carolina has not recognized a claim for malicious prosecution based on an administrative proceeding, even if that proceeding is judicial in nature." (Dkt. No 27-1 at 23). The Court concludes that the LLR complaint process can be sufficiently "judicial" to support the common law cause of action for malicious prosecution. *See* 7 Am. Jur. Proof of Facts 2d Malicious Prosecution § 7 (2012) ("It is now widely accepted that the initiation of proceedings before an administrative board, which has the power to take action adversely affecting the rights of the person proceeded against, may form the basis of a subsequent action for malicious prosecution."); *see also* F. Patrick Hubbard & Robert L. Felix, The South Carolina Law of Torts, 462 (3d ed. 2004) ("Administrative proceedings can support a claim." (citing 52 Am. Jur. 2d Malicious Prosecution § 15)); Restatement (Second) of Torts § 680 (2012).

Second, and finally, Defendant argues that "even if an administrative proceeding is 'judicial'

---

[6] The Court need not at this stage parse the mental anguish "arising out of the threat," as opposed to that occurring subsequent to Plaintiff's termination. Further factual development may help clarify this issue. For now it is enough to say that the claim as a whole survives dismissal.

in nature . . . , no such proceeding has been alleged in the present case." (Dkt. No. 27-1 at 23). Plaintiff alleges that "Defendant instituted civil and administrative proceedings against Plaintiff by filing a complaint with the LLR." (Dkt. No. 25 at 23). Plaintiff also alleges that an LLR "drug abuse counselor . . . found that Plaintiff had not stolen or taken any drugs," making it plausible to infer the termination of the proceeding in her favor. (Dkt. No. 25 at 23).[7] As the Magistrate Judge correctly observed, Defendants can raise arguments about the existence of any such proceeding, or the true outcome of that proceeding, at a later stage. (Dkt. No. 25). At this stage, though, Plaintiff's allegations are sufficient to avoid dismissal, and Defendant's motion to dismiss the malicious prosecution claim is denied.

## Conclusion

The Court hereby adopts the Magistrate Judge's Report and Recommendation **GRANTING** Defendant's motion to dismiss Plaintiff's claims of: (1) race discrimination and retaliation under the South Carolina Human Affairs Law ("SCHAL"); (2) breach of contract; and (3) intentional infliction of emotional distress for conduct occurring prior to and including her termination. For the reasons set forth above, the Court **DENIES** Defendant's motion to dismiss Plaintiff's remaining claims.

---

[7] Under South Carolina law, upon the filing of an initial complaint with the LLR, it is mandatory that an LLR investigator be assigned to the case and produce a report that is reviewed by the Board of Nursing's Investigative Review Committee ("IRC"). *See* 26 S.C. Code Regs. § 91-19(c),(d). The IRC, which is made up of the investigator, Board attorney, two Board members, and other staff as appropriate, reviews the complaint in relation to the pertinent statutes, and then makes a recommendation which may range from dismissal to a formal Board hearing. *Id.*; *see also* Complaint Procedure, Bd. of Nursing, S. C. Dep't of Labor, Licensing and Regulation, http://www.llr.state.sc.us/pol/nursing/index.asp?file=boncomplaintproc.htm (last visited Dec. 7, 2012).

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Judge

Charleston, South Carolina
December 11, 2012